| | | |
|---|---|---|
| **JOSÉ D. CARRILLO PONTÓN y otros**<br><br>Apelado<br><br>v.<br><br>**WINDMAR P.V. ENERGY, INC. H/N/C WINDMAR HOME**<br><br>Apelante | KLAN202500087 | **APELACIÓN** procedente del Tribunal de Primera Instancia, Sala Superior de **Ponce**<br><br>Caso Núm. **PO2024CV02869**<br><br>Sobre: Despido Injustificado bajo la Ley Núm. 80 de 30 de mayo de 1976, según enmendada |

Panel integrado por su presidenta, la Jueza Cintrón Cintrón, la Jueza Rivera Marchand y la Juez Barresi Ramos.

Cintrón Cintrón, Jueza Ponente

### SENTENCIA

En San Juan, Puerto Rico, a 2 de diciembre de 2025.

Comparece ante este foro revisor, Windmar P.V. Energy, Inc. h/n/c Windmar Home (parte querellada o parte apelante) mediante *Certiorari* y nos solicita que revoquemos la *Sentencia en Rebeldía* dictada el 22 de enero de 2025 por el Tribunal de Primera Instancia (TPI), Sala Superior de Ponce. Mediante el referido dictamen, el foro primario declaró *Ha Lugar* la querella sobre despido injustificado presentada por el Sr. José D. Carrillo Pontón, el Sr. Juan X. Pérez Cora, el Sr. Richard Vega Rodríguez y el Sr. José Meléndez Meléndez (en conjunto, parte querellante o parte apelada) y, consecuentemente, le impuso a Windmar pagar las cantidades correspondientes a la mesada por despido injustificado, los salarios adeudados y los honorarios de abogado.

Por los fundamentos que expondremos a continuación, se *confirma* la *Sentencia en Rebeldía* apelada.

Número Identificador

SEN2025 _____

# I.

Según surge del expediente, el caso de autos se originó el 3 de octubre de 2024, cuando la parte querellante incoó una *Querella* sobre despido injustificado contra la parte querellada. En esta, alegó que fueron despedidos injustificadamente por su patrono y, por ello, solicitaron que se les concediera la mesada y honorarios de abogado.

Así las cosas, en la misma fecha de presentación de la querella, la Secretaría del Tribunal expidió el emplazamiento. Este disponía que la parte querellada tenía un término de quince (15) días a partir del diligenciamiento del emplazamiento para presentar su alegación responsiva. El mismo fue diligenciado el 16 de octubre de 2024.

Luego, el 4 de noviembre de 2024, la parte querellante presentó una *Solicitud de Anotación en Rebeldía y Sentencia*. En esta, sostuvo que el plazo de quince (15) días para presentar la contestación a la querella venció el 31 de octubre de 2024, sin que la parte querellada presentara su escrito dentro del plazo dispuesto para ello en la Ley Núm. 2. Por tal razón, solicitó al tribunal que anotara la rebeldía a la parte querellada y dictara sentencia en conformidad. El mismo día, pero notificada el 7 de noviembre de 2024, el foro primario dictó una *Orden* en la cual le anotó la rebeldía a la parte querellada.

Por su parte, el 25 de noviembre de 2024, sin someterse a la jurisdicción del tribunal, la parte querellada presentó una *Moción de Desestimación por Falta de Jurisdicción por Nulidad de Emplazamiento*. Allí, arguyó que el contenido del emplazamiento era defectuoso pues no cumplía con los requisitos estatutarios del contenido de la notificación según dispuesto en la Sección 3 de la Ley Núm. 2, *supra*. En específico, planteó que el emplazamiento era nulo por no apercibirle del término correcto para presentar su

alegación responsiva. Por ello, solicitó se dejara sin efecto la anotación de rebeldía.

El 27 de noviembre de 2024, el foro de instancia dictaminó una *Orden* concediéndole a la parte querellante un plazo de quince (15) días para exponer su posición. En cumplimiento con la referida orden, el 2 de diciembre de 2024, la parte querellante presentó su *Oposición a Desestimación*. Planteó que el alegado defecto en el contenido del emplazamiento no lo hacía nulo. Por su parte, el mismo día, Windmar, presentó una *Breve Réplica* reiterando su posición. Luego, la parte querellante instó *Dúplica a Réplica*.

El 17 de enero de 2025, la parte querellante presentó *Moción en Torno a Sentencia en Rebeldía*. En su escrito, arguyó que no existía impedimento alguno en derecho que impidiera que el tribunal dictara sentencia en rebeldía contra quien no cumplió con presentar su alegación responsiva dentro del término jurisdiccional contemplado en la Ley Núm. 2, supra.

El 22 de enero de 2025, la parte querellada presentó una *Oposición a Segunda Moción de Anotación de Rebeldía* y *Orden de Proyecto de Sentencia* en la cual reiteró los argumentos ya esbozados ante el tribunal. A esos efectos, sostuvo que la parte querellante le indujo a error a través de un emplazamiento deficiente, cuyo único resultado fue que no se adquiriera jurisdicción sobre su persona. Además, arguyó que dicho incumplimiento conllevaba la nulidad del emplazamiento toda vez que no se trataba de un error de forma subsanable.

El 23 de enero de 2025, la parte querellante presentó *Oposición a Comparecencia en Rebeldía*. Expresó que la parte querellada continuaba compareciendo en rebeldía y que, en su último escrito, no había aportado fundamento alguno en derecho que sostuviera su posición de que tener quince (15) días en lugar de diez (10) para comparecer en el pleito mediante alegación responsiva

hacía nula la notificación del emplazamiento. Ese mismo día, la parte querellada presentó una *Breve Réplica* en la cual manifestó que el adecuado diligenciamiento del emplazamiento constituía un imperativo constitucional del debido proceso de ley, por lo que forzar a que se dictara sentencia en rebeldía no podía ser avalado por el foro primario.

Evaluadas las posturas de las partes, el 22 de enero de 2025, el foro *a quo* emitió la *Sentencia en Rebeldía* que hoy revisamos. En esta, expuso que, el emplazamiento fue debidamente diligenciado con copia de la *Querella* a la parte querellada el dieciséis (16) de octubre de 2024 y que, habiendo transcurrido el término de quince (15) días sin que dicha parte compareciera al pleito, procedía dictar sentencia en rebeldía concediendo el remedio solicitado. Consecuentemente, ordenó a Windmar pagar a las partes querellantes las cantidades correspondientes a la mesada reclamada por el despido injustificado, más los salarios adeudados y los honorarios de abogado. Así las cosas, otorgó la suma de nueve mil ciento noventa y cuatro dólares con cincuenta y cinco centavos ($9,194.55) por concepto de honorarios de abogados e individualmente concedió las siguientes partidas:

(a) José D. Carrillo Pontón - siete mil ciento cuarenta ($7,140.00) por concepto de mesada;

(b) Juan X. Pérez Cora - ocho mil ochocientos veinte ($8,820.00) por concepto de mesada;

(c) Richard Vega Rodríguez- diez mil novecientos cuarenta y cuatro ($10,944.00) por concepto de mesada, más dos mil setecientos siete dólares con veinte centavos ($2,707.20) por concepto de salarios por vacaciones, para una cantidad total de trece mil seiscientos cincuenta y un dólares con veinte centavos ($13,651.20);

(d) José Meléndez Meléndez - ocho mil doscientos cincuenta dólares ($8,250.00) por concepto de mesada, más quinientos setenta y dos dólares ($572.00) por concepto de salarios por asistencia perfecta durante el mes de agosto de 2024, para un total de ocho mil ochocientos veintidós dólares ($8,822.00).

En desacuerdo con la determinación, el 31 de enero de 2025, la parte apelante acudió ante este foro revisor mediante recurso de *Certiorari* señalando los siguientes errores:

Si el emplazamiento es nulo.

Si la Sentencia en Rebeldía se dictó sin jurisdicción.

Si apercibir al demandado con exactitud del término de ley para contestar una querella laboral es un requisito constitucional y su incumplimiento acarrea la nulidad.

Si se ha violado el derecho constitucional al debido proceso de ley del patrono peticionario.

Si el error en el emplazamiento no es subsanable e implica su nulidad.

El 13 de febrero de 2025, la parte querellante compareció mediante *Alegato de la Parte Apelada*.

Con el beneficio de la comparecencia de ambas partes, estamos en posición de resolver.

## II.

### A.

Nuestro ordenamiento jurídico no prohíbe el despido de un empleado, sino que protege el derecho del obrero puertorriqueño a la tenencia de su empleo de una manera más efectiva. *Segarra Rivera v. Int'l Shipping et al.*, 208 DPR 964 (2022). Por ello, se adoptó la Ley Núm. 80 de 30 de mayo de 1976, según enmendada, también conocida como *Ley Sobre Despidos Injustificados*, 29 LPRA sec. 185a *et seq.* Dicho estatuto busca la protección del obrero que ha sido privado injustificadamente de su trabajo, sin la oportunidad de recibir una indemnización para suplir sus necesidades básicas. *Rodríguez Gómez v. Multinational Ins.*, 207 DPR 540, 549 (2021).

La referida legislación establece las circunstancias particulares que se entenderán como justa causa para el despido de un empleado. Algunas de éstas están basadas en conducta atribuibles al obrero, entre ellas se encuentran el patrón de comportamiento impropio o desordenado por parte del empleado;

rendir el trabajo de manera deficiente, ineficiente, insatisfactorio, pobre, tardío o negligentemente o en violación a las normas de calidad del producto; o incurrir en violaciones reiteradas a las reglas y reglamentos establecidas para el funcionamiento del establecimiento. Sobre el particular, el Artículo 2 de la Ley Núm. 80, *supra*, dispone que:

> Se entenderá por justa causa para el despido de un empleado que no esté motivada por razones legalmente prohibidas y que no sea un mero capricho del patrono. Además, se entenderá por justa causa aquellas razones que afecten el buen y normal funcionamiento de un establecimiento que incluyen, entre otras, las siguientes:
>
> (a) Que el empleado incurra en un patrón de conducta impropia o desordenada
> (b) Que el empleado incurra en un patrón de desempeño deficiente, ineficiente, insatisfactorio, pobre, tardío o negligente. Esto incluye incumplir con normas y estándares de calidad y seguridad del patrono, baja productividad, falta de competencia o habilidad para realizar el trabajo a niveles razonables requeridos por el patrono y quejas repetidas de los clientes del patrono.
> (c) Violación reiterada por el empleado de las reglas y reglamentos razonables establecidos para el funcionamiento del establecimiento siempre que copia escrita de los mismos se haya suministrado oportunamente al empleado.
> (d) Cierre total, temporero o parcial de las operaciones del establecimiento. En aquellos casos en que el patrono posea más de una oficina, fábrica, sucursal o planta, el cierre total, temporero o parcial de las operaciones de cualquiera de estos establecimientos donde labora el empleado despedido, constituirá justa causa para el despido a tenor con esta sección.
> (e) Los cambios tecnológicos o de reorganización, así como los de escrito, diseño o naturaleza del producto que se produce o maneja por el establecimiento y los cambios en los servicios rendidos al público.
> (f) Reducciones en empleo que se hacen necesarias debido a una reducción en el volumen de producción, ventas o ganancias, anticipadas o que prevalecen al ocurrir el despido o con el propósito de aumentar la competitividad o productividad del establecimiento.
>
> 29 LPRA sec. 185b.

No obstante, esta lista no es taxativa, sino que provee ejemplos "...sobre el tipo de conducta que constituye razón y motivo justificados para el despido, por estar reñido con la ordenada

marcha y normal funcionamiento de una empresa". *Srio. del Trabajo v. G.P. Inds., Inc.,* 153 DPR 223, 244 (2001).

Cónsono con lo anterior, nuestro ordenamiento jurídico ha facultado al patrono para crear reglamentos y normas razonables necesarias para el buen funcionamiento de la empresa que definan las faltas que podrían acarrear el despido como sanción. *González Santiago v. Baxter Healthcare,* 202 DPR 281, 292 (2019) citando *Jusino et als. v. Walgreens,* 155 DPR 560, 573 (2001). Ahora bien, cabe señalar que la Ley Núm. 80, *supra,* no favorece el despido como sanción a la primera falta. Sin embargo, se puede considerar como justa causa para la cesantía, siempre que dicha acción u omisión sea de tal gravedad que ponga en riesgo la seguridad, el orden o la eficiencia que constituyen el funcionamiento del negocio, pues sería una imprudencia esperar su reiteración para despedir al empleado. *González Santiago v. Baxter Healthcare,* supra, a la pág. 293; *Rivera v. Pan Pepín,* 161 DPR 681, 689-690 (2004).

Ahora bien, en lo pertinente al asunto ante nuestra consideración, la Ley Núm. 80 establece que "[t]odo empleado que trabaja para un patrono mediante remuneración, contratado sin tiempo determinado, que fuere despedido sin que haya mediado una justa causa, tendrá derecho a recibir de su patrono por concepto de indemnización por despido" una compensación (además del sueldo devengado), típicamente denominada como la mesada. Véase, Exposición de Motivos de la Ley Núm. 80-1976; *Rodríguez Gómez v. Multinational Ins.,* supra, a la pág. 550; *Indulac v. Unión,* 207 DPR 279, 298 (2021); *Orsini v. Srio de Hacienda,* 177 DPR 596, 620-621 (2009). Estos, tendrán derecho a recibir de su patrono por concepto de indemnización por despido lo siguiente:

> (a) Una cantidad equivalente a tres (3) meses de sueldo por concepto de indemnización, siempre y cuando haya culminado el periodo probatorio aplicable según se dispone en esta Ley, o el periodo probatorio distinto que las partes hayan estipulado; y

(b) Una cantidad equivalente a dos (2) semanas de sueldo por cada año completo de servicio.

En ningún caso la indemnización requerida bajo esta Ley excederá el sueldo correspondiente a nueve (9) meses de sueldo.

[...]

29 LPRA sec. 185a.

El cómputo de la indemnización que se le otorgará al empleado se pagará tomando como base el tipo de salario más alto devengado por este dentro de los tres (3) años inmediatamente anteriores al momento de su despido. 29 LPRA sec. 185d. A su vez, dicha compensación se computará a base del mayor número de horas regulares de trabajo del empleado, durante cualquier período de treinta (30) días naturales consecutivos, dentro del año inmediatamente anterior al despido. 29 LPRA sec. 185g.

**B.**

La *Ley de Procedimiento Sumario de Reclamaciones Laborales*, Ley Núm. 2 del 17 de octubre de 1961, 32 LPRA sec. 3118 *et seq.*, provee un trámite especial para atender las querellas relacionadas con las disputas laborales presentadas por empleados u obreros en contra de sus patronos. *León Torres v. Rivera Lebrón*, 204 DPR 20, 30 (2020), citando a *Ruiz Camilo v. Trafon Group, Inc.*, 200 DPR 254, 265 (2018). Este mecanismo se distingue por la celeridad con la cual se deben encausar estos procesos judiciales. El carácter sumario constituye la médula de esta ley. *Íd.*

Cuando se origina una reclamación bajo el procedimiento sumario y se notifica al patrono querellado con copia de la querella, éste cuenta solo con diez (10) días para responder, si la notificación se efectuó en el distrito judicial en el cual se inició la acción, y dentro de los quince (15) días en los demás casos. 32 LPRA sec. 3120. Es importante recalcar que únicamente se considerarán solicitudes del querellado para extender el término para contestar la querella si se

consigna bajo juramento causa justificada para ello. *León Torres v. Rivera Lebrón*, supra, a la pág. 31. "En ningún otro caso tendrá jurisdicción el tribunal para conceder esa prórroga". 32 LPRA sec. 3120. Asimismo, el querellado solo puede incoar una alegación responsiva en la cual deberá incluir todas sus defensas y objeciones, entendiéndose que renuncia a todas las defensas u objeciones que no incluya en dicha alegación responsiva. *Íd.* De esta forma, la propia ley delimita el alcance de la autoridad de los tribunales.

Conforme a lo anterior, la consecuencia de que el patrono no conteste la querella oportunamente, ni presente una petición juramentada para prorrogar el término dispuesto para ello, es la anotación de la rebeldía y la concesión del remedio solicitado sin más citarle ni oírle. 32 LPRA secs. 3120-3121. De esta normativa surge el deber inequívoco del tribunal de darle un cumplimiento cabal al procedimiento dispuesto en la Ley Núm. 2, *supra*, ya que carece de jurisdicción para extender el término para contestar una querella, a menos que se observen los criterios o las normas procesales para la concesión de una prórroga. *Valentín v. Housing Promoters, Inc.*, 146 DPR 712, 717-718 (1998).

Así, el lenguaje de la Ley Núm. 2, *supra*, no es discrecional, toda vez que le ordena al tribunal dictar sentencia cuando el querellado no contesta oportunamente sin una causa justificada. Ante ello, **como norma general, luego de que se extingue el término para contestar la querella, sin que se haya justificado adecuadamente la incomparecencia, el tribunal está impedido de tomar cualquier otra determinación que no sea anotarle la rebeldía al querellado. A ello queda limitada la jurisdicción del tribunal, según establecida por la Sec. 3 de la Ley Núm. 2, *supra*.** *Vizcarrondo Morales v. MVM, Inc.*, 174 DPR 921, 934-935 (2008). (Énfasis nuestro).

## C.

El emplazamiento es el mecanismo procesal mediante el cual un tribunal puede adquirir jurisdicción sobre la persona del demandado, de manera tal que pueda sujetarlo al dictamen que finalmente emita. *Ross Valedón v. Hosp. Dr. Susoni et al.*, 213 DPR 481, 487-488 (2024); *Márquez Resto v. Barreto Lima*, 143 DPR 137, 142 (1997). El debido proceso de ley exige que el emplazamiento se diligencie eficazmente, en aras de que constituya una notificación adecuada sobre determinada acción judicial. Así pues, **su propósito cardinal es avisar, de manera sucinta y sencilla, al demandado, de la existencia de un pleito en su contra para que pueda comparecer y presentar su defensa**. *Álvarez v. Arias*, 156 DPR 352, 366 (2002); *Banco Central Corp. v. Capitol Plaza, Inc.*, 135 DPR 760, 763-764 (1994) (Énfasis nuestro). Por estar revestido de constitucionalidad, sus requisitos deben cumplirse cabalmente, so pena de que su inobservancia prive de jurisdicción al tribunal e invalide la sentencia que, en su día, emita. *Datiz v. Hospital Episcopal*, 163 DPR 10, 15 (2004). La citación o el emplazamiento constituyen el paso inaugural a la autoridad de los tribunales, viabilizando así un trato justo para la parte afectada por la acción. *Bernier González v. Rodríguez Becerra*, 200 DPR 637, 644 (2018); *Álvarez v. Arias*, *supra*, a la pág. 366; *Acosta v. ABC*, 142 DPR 927 (1997).

## III.

Por su estrecha relación, discutiremos los señalamientos de error conjuntamente.

En esencia, en su recurso, la parte apelante alega que el foro de instancia cometió error al dictar Sentencia en Rebeldía por las siguientes razones: (1) el emplazamiento era nulo; (2) la Sentencia en Rebeldía se dictó sin jurisdicción; (3) si apercibir al demandado con exactitud del término de ley para contestar una querella laboral

es un requisito constitucional y su incumplimiento acarrea la nulidad; (4) si se ha violado el derecho constitucional al debido proceso de ley del patrono peticionario y; (5) si el error en el emplazamiento no es subsanable e implica su nulidad. En consonancia, sostiene que la parte querellante no le puso en posición de comparecer en el pleito debido a que le diligenció un emplazamiento defectuoso, en tanto y en cuanto, este no fue realizado conforme a derecho. Así, arguye que, estando ante una notificación nula radical, resultaba secundario el plazo que le tomara comparecer y cuestionar su nulidad pues no se trataba de un error de forma subsanable.

Por su parte, la parte apelada señala que la sentencia apelada fue dictada conforme a derecho. Argumenta que no existe fundamento legal alguno que apoye los planteamientos de la parte apelada. Reitera, además, que la única razón por la cual la parte querellada no compareció en tiempo fue su negligencia crasa, toda vez que fue debidamente notificada del término en ley para comparecer y no lo hizo sino hasta cuarenta (40) días después.

De un examen de la copia del emplazamiento contenida en el expediente del presente recurso, podemos concluir que el foro *a quo* no erró cuando declaró sin lugar la solicitud de desestimación presentada por la parte querellante y procedió a dictar sentencia en rebeldía. *Veamos.*

Según se desprende del expediente, resulta innegable que la parte querellada no contestó la *Querella* en el término instituido para ello, ni solicitó prórroga juramentada a esos efectos, aun cuando fue debidamente notificada de la causa de acción en su contra. El emplazamiento fue diligenciado el 16 de octubre de 2024. Sin embargo, no fue sino hasta el 25 de noviembre de 2024, transcurridos en exceso cuarenta (40) días de los diez (10) o quince (15) días aplicables para contestar, según dispone la Ley Núm. 2,

supra, que solicitó al Tribunal que dejara sin efecto la anotación de rebeldía y desestimara la causa de acción instada en su contra, bajo el fundamento de que el emplazamiento era nulo.

Recordemos que en los casos gestionados bajo el procedimiento sumario de la Ley Núm. 2, supra, el foro de instancia no tiene discreción para negarse a anotar la rebeldía, ni considerar una moción de desestimación, cuando la parte querellada no compareció oportunamente ni solicitó prórroga a tales efectos. De ordinario, cuando ello ocurre el tribunal sólo tiene jurisdicción para anotar la rebeldía y dictar sentencia. *Vizcarrondo Morales v. MVM, Inc.*, supra, pág. 936.

Cabe resaltar además que, en nuestro ordenamiento jurídico, el emplazamiento constituye el mecanismo procesal mediante el cual se le comunica formalmente a una parte que se ha instado un procedimiento en su contra y que debe comparecer dentro del término dispuesto por ley para responder a las alegaciones formuladas. El propósito principal del emplazamiento es **garantizar el debido proceso de ley mediante la notificación adecuada y oportuna**, de forma que la parte emplazada tenga una oportunidad real y efectiva de defender sus derechos. Siendo así, este foro revisor concluye que los planteamientos de la parte querellada carecen de méritos. *Nos explicamos.*

En el caso de autos, el emplazamiento diligenciado cumplió con su función jurídica de notificar a la parte querellada de que se había incoado una acción en su contra. Ello pues, consta en el expediente que la parte querellada tuvo conocimiento efectivo del pleito y del término en ley para comparecer el 16 de octubre de 2024 y que, no fue sino hasta el 25 de noviembre de 2024, que compareció ante el tribunal de instancia sin someterse a la jurisdicción. Ello a pesar de que había sido debidamente notificada del pleito. Además, no nos convence su alegación en cuanto a que el diligenciamiento

del emplazamiento fue nulo por razón de que se le indujo a error sobre el plazo para presentar su alegación responsiva. No existe razón alguna para utilizar tal alegación como justificación para el incumplimiento con los plazos procesales establecidos en la Ley Núm. 2, *supra.*

Por tal razón, somos del criterio de que el foro primario actuó correctamente al anotar la rebeldía a la parte querellante, conforme a la Ley Núm. 2 y su jurisprudencia interpretativa y, en consecuencia, dictar sentencia en rebeldía. No se cometieron los errores señalados por la parte apelante.

### IV.

Por los fundamentos antes esbozados, confirmamos la *Sentencia en Rebeldía* emitida el 22 de enero de 2025 por el Tribunal de Primera Instancia, Sala Superior de Ponce.

Lo acordó el Tribunal y lo certifica la Secretaria. La Juez Barresi Ramos disiente mediante opinión escrita.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones

| | | |
|---|---|---|
| JOSÉ D. CARRILLO PONTÓN Y OTROS<br>DEMANDANTE(S)-APELADA(S)<br><br>V.<br><br>WINDMAR P.V. ENERGY, INC. H/N/C WINDMAR HOME<br>DEMANDADA(S)-APELANTE(S) | KLAN202500087 | *APELACIÓN*<br>procedente del Tribunal de Primera Instancia, Sala Superior de PONCE<br><br>Caso Núm.<br>PO2024CV02869 (602)<br><br>Sobre:<br>Despido Injustificado bajo la Ley Núm. 80 de 30 de mayo de 1976, según enmendada |

Panel integrado por su presidenta, la Jueza Cintrón Cintrón, la Jueza Rivera Marchand y la Juez Barresi Ramos.

### VOTO DISIDENTE DE LA JUEZ BARRESI RAMOS

En San Juan, Puerto Rico, hoy día 2 de diciembre de 2025.

Por entender que el Tribunal de Primera Instancia, Sala Superior de Ponce, no adquirió jurisdicción sobre WINDMAR P.V. ENERGY, INC. H/N/C WINDMAR HOME (WINDMAR), y procede **revocar** la *Sentencia en Rebeldía* promulgada el 22 de enero de 2025, disentimos respetuosamente de la opinión mayoritaria.



- I -

Encontramos pertinentes a la presente controversia los siguientes hechos e incidentes procesales:

El 3 de octubre de 2024, CARRILLO PONTÓN Y OTROS instaron una *Querella* sobre despido injustificado contra WINDMAR en la cual alegaron que fueron despedidos injustificadamente e interpelaron el pago de su mesada.[1] El emplazamiento fue diligenciado el 16 de octubre de 2024.[2] Empero, el

---

[1] Apéndice de *Certiorari*, págs. 1- 4.
[2] *Íd.*, págs. 12- 13.

mismo disponía que **WINDMAR** tenía un término de **quince (15) días** para presentar su alegación responsiva.

Posteriormente, el 4 de noviembre de 2024, **CARRILLO PONTÓN Y OTROS** presentaron una *Solicitud de Anotación en Rebeldía y Sentencia*.[3] Argumentaron que el plazo de quince (15) días para presentar la contestación a querella había vencido el 31 de octubre de 2024; **WINDMAR** no había contestado dentro del plazo dispuesto por la Ley Núm. 2; y procedía se dictara sentencia en rebeldía. En la misma fecha, se dictó *Orden* en la cual se le anotó rebeldía a **WINDMAR**.[4]

El 25 de noviembre de 2024, sin someterse a la jurisdicción, **WINDMAR** presentó *Moción de Desestimación por Falta de Jurisdicción por Nulidad de Emplazamiento*.[5] Adujo que el contenido del emplazamiento era defectuoso por no apercibir al patrono los términos legales aplicables para presentar su alegación responsiva. Ante ello, recabó se dejará sin efecto la anotación de rebeldía. El 27 de noviembre de 2024, se determinó *Orden* en la cual se le concedió a **CARRILLO PONTÓN Y OTROS** un plazo de quince (15) días para exponer su posición.[6] En consecuencia, el 2 de diciembre de 2024, **CARRILLO PONTÓN Y OTROS** presentaron *Oposición a Desestimación* arguyendo que el alegado error en el contenido del emplazamiento no es un defecto que lo haga nulo.[7] Ese día, **WINDMAR** presentó una *Breve Réplica* reiterando su contención.[8] Más tarde, el 2 de diciembre de 2024, **CARRILLO PONTÓN Y OTROS** presentaron *Dúplica a Réplica*.[9]

El 17 de enero de 2025, **CARRILLO PONTÓN Y OTROS** presentaron su *Moción en Torno a Sentencia en Rebeldía*.[10] Expusieron que no existía impedimento alguno en derecho para que se dictara *Sentencia en Rebeldía*

---

[3] Apéndice de *Certiorari*, págs. 10- 11.
[4] *Íd.*, pág. 14.
[5] *Íd.*, págs. 17- 20.
[6] *Íd.*, pág. 22.
[7] Apéndice de *Certiorari*, págs. 23- 27.
[8] *Íd.*, págs. 28- 31.
[9] *Íd.*, págs. 32- 33.
[10] *Íd.*, pág. 37.

contra quien no cumplió con presentar su alegación responsiva dentro del término jurisdiccional.

El 22 de enero de 2025, **WINDMAR** presentó *Oposición a Segunda Moción de Anotación de Rebeldía* y *Orden de Proyecto de Sentencia* en la cual insistió que **CARRILLO PONTÓN Y OTROS** le indujo a error mediante un emplazamiento deficiente.[11] Simultáneamente, se prescribió la *Sentencia en Rebeldía* apelada. Además, se intimó *Resolución a Moción de Desestimación* mediante la cual se mantuvo la anotación de rebeldía a **WINDMAR**.[12]

Al día siguiente, el 23 de enero de 2025, **CARRILLO PONTÓN Y OTROS** presentaron *Oposición a Comparecencia en Rebeldía* expresando que: "sin aportar argumento alguno en derecho que sostenga que tener 15 días en vez de 10 días para haber comparecido hace nulo la notificación del emplazamiento".[13] En horas de la tarde, **WINDMAR** presentó una *Breve Réplica* enunciando que: "el adecuado diligenciamiento del emplazamiento constituye un cumplimiento estricto cuando de obedecer sus requisitos se trata.[...] la parte querellante se ciega al hecho irrefutable que diligenciaron un emplazamiento con defectos constitucionales no subsanables".[14]

El día 22 de enero de 2025, se concretó la *Sentencia en Rebeldía* apelada. Además, se dictaminó *Resolución a Moción de Desestimación* mediante la cual se mantuvo la anotación de rebeldía a **WINDMAR**.[15]

Insatisfecho, el 31 de enero de 2025, **WINDMAR** recurrió ante este foro intermedio revisor mediante su *Certiorari* señalando el(los) siguiente(s) error(es):

> Si el emplazamiento es nulo.
>
> Si la Sentencia en Rebeldía se dictó sin jurisdicción.
>
> Si apercibir al demandado con exactitud del término de ley para contestar una querella laboral es un requisito constitucional y su incumplimiento acarrea la nulidad.

---

[11] Apéndice de *Certiorari*, págs. 39- 45.
[12] *Íd.*, pág. 53.
[13] Apéndice de *Certiorari*, pág. 46.
[14] *Íd.*, págs. 47- 48.
[15] *Íd.*, pág. 53.

Si se ha violado el derecho constitucional al debido proceso de ley del patrono peticionario.

Si el error en el emplazamiento no es subsanable e implica su nulidad.

El 13 de febrero de 2025, CARRILLO PONTÓN Y OTROS presentó su *Alegado de la Parte Apelada.*

- II -

- A – *DESPIDO INJUSTIFICADO*

La *Ley sobre Despidos Injustificados,* conocida como la Ley Núm. 80 de 30 de Mayo de 1976 (Ley Núm. 80-1976), según enmendada, tiene el propósito de "garantizar que los empleados despedidos sin justa causa tengan derecho a recibir de su patrono una compensación correspondiente a un (1) mes de sueldo más una indemnización adicional progresiva equivalente a por lo menos una (1) semana de sueldo por cada año de servicio.[16] La referida Ley, se adoptó en protección del obrero que ha sido privado injustificadamente de su trabajo, sin la oportunidad de recibir una indemnización para suplir sus necesidades básicas.[17] A esos efectos, la Ley Núm. 80- 1976 le impone al patrono el pago de una indemnización o mesada, a favor de aquel empleado que es despedido, sin justa causa. [18]

Las protecciones conferidas por la Ley Núm. 80- 1976 se extienden a todo empleado que (1) trabaja para un patrono mediante remuneración; (2) haya sido contratado sin tiempo determinado, y (3) sea despedido sin que mediara una justa causa.[19] Estos, tendrán derecho a recibir de su patrono por concepto de indemnización por despido lo siguiente:

(a) Una cantidad equivalente a **tres (3) meses de sueldo por concepto de indemnización,** siempre y cuando haya culminado el periodo probatorio aplicable según se dispone en esta Ley, o el periodo probatorio distinto que las partes hayan estipulado; y
(b) **Una cantidad equivalente a dos (2) semanas de sueldo por cada año completo de servicio.**
En ningún caso la indemnización requerida bajo esta Ley excederá el sueldo correspondiente a nueve (9) meses de sueldo. [...] (Énfasis nuestro).

---

[16] Véase la *Exposición de Motivos* de la Ley Núm. 80-1976.
[17] *Segarra Rivera v. Int'l Shipping et al.,* 208 DPR 964 (2022).
[18] *Íd.*
[19] 29 LPRA § 185(a).

Por su parte, en cuanto al cómputo de la indemnización que se le otorgará al empleado, de prevalecer, el Artículo 4 de la Núm. 80-1976 dispone que se pagará como base el tipo de salario más alto devengado por el empleado dentro de los tres (3) años inmediatamente anteriores al momento de su despido.[20] De igual manera, el Artículo 7 preceptúa que la mesada de la compensación y la indemnización por cesantía sin justa causa, provista en el Artículo 1 de la Ley Núm. 80-1976, se computará a base del mayor número de horas regulares de trabajo del empleado, durante cualquier periodo de treinta (30) días naturales consecutivos, dentro del año inmediatamente anterior al despido.[21]

Ahora bien, nuestro ordenamiento jurídico no prohíbe absolutamente el despido de un empleado o empleada; más bien, castiga el despido sin justa causa.[22] La Ley Núm. 80-1976 considera injustificado el despido que se hace por mero capricho del patrono, y no guarda relación con la necesidad de asegurar el buen y normal funcionamiento de un establecimiento.[23]

En ese sentido, el Artículo 2 de la Núm. 80-1976 instituye posibles situaciones en las cuales existe justa causa para el despido de un empleado que no esté motivada por razones legalmente prohibidas y que no sea producto del mero capricho del patrono:

(a) Que el empleado incurra en un patrón de conducta impropia o desordenada.

(b) Que el empleado incurra en un patrón de desempeño deficiente, ineficiente, insatisfactorio, pobre, tardío o negligente. Esto incluye incumplir con normas y estándares de calidad y seguridad del patrono, baja productividad, falta de competencia o habilidad para realizar el trabajo a niveles razonables requeridos por el patrono y quejas repetidas de los clientes del patrono.

(c) Violación reiterada por el empleado de las reglas y reglamentos razonables establecidos para el funcionamiento del establecimiento siempre que copia escrita de los mismos se haya suministrado oportunamente al empleado.

(d) Cierre total, temporero o parcial de las operaciones del establecimiento. En aquellos casos en que el patrono posea más de una oficina, fábrica, sucursal o planta, el cierre total, temporero o parcial de las operaciones de cualquiera de estos

---

[20] 20 LPRA § 185(d).
[21] 29 LPRA § 185(f).
[22] *Rivera Figueroa v. The Fuller Brush Co.*, 180 DPR 894, 904 (2011).
[23] 29 LPRA § 185(b); *León Torres v. Rivera Lebrón*, 204 DPR 20, 38 (2020).

establecimientos donde labora el empleado despedido, constituirá justa causa para el despido a tenor con este Artículo.

(e) Los cambios tecnológicos o de reorganización, así como los de estilo, diseño o naturaleza del producto que se produce o maneja por el establecimiento y los cambios en los servicios rendidos al público.

(f) Reducciones en empleo que se hacen necesarias debido a una reducción en el volumen de producción, ventas o ganancias, anticipadas o que prevalecen al ocurrir el despido o con el propósito de aumentar la competitividad o productividad del establecimiento.[24]

Por otro lado, la Ley 80- 1976 en su Artículo 11, inciso (b), expresa lo siguiente:

En todo pleito fundado en esta ley, el tribunal celebrará una conferencia con anterioridad al juicio no más tarde de treinta (30) días después de contestada la demanda. Terminada dicha conferencia, si en su criterio hubiere razones suficientes, más allá de las circunstancias de existir alegaciones conflictivas para creer que su despido fue sin justa causa, dictará una orden para que en término improrrogable de quince (15) días, el patrono demandado deposite en la secretaría del tribunal una suma equivalente a la compensación total a la cual tendría derecho el empleado, **y además, una cantidad para honorarios de abogado que nunca será menor del quince por ciento (15%) del total de la compensación o cien dólares ($100), la que fuere mayor.** El patrono demandado podrá prestar una fianza adecuada para cubrir estas cantidades. Dichas cantidades o dicha fianza le serán devueltas al patrono si se dictare sentencia final y firme en su favor. En cualquier etapa de los procedimientos, en que, a petición de parte, el tribunal determine que existe grave riesgo de que el patrono carezca de bienes suficientes para satisfacer la sentencia que pueda dictarse en su día en el caso, el tribunal podrá exigir el depósito antes indicado o la correspondiente fianza.[25] (Énfasis nuestro).

## - B - *PROCEDIMIENTO SUMARIO DE RELACIONES LABORALES*

La *Ley de Procedimiento Sumario de Reclamaciones Laborales*, conocida como la Ley Núm. 2 de 17 de octubre de 1961 (Ley Núm. 2- 1961), según enmendada, fue promulgada como un mecanismo procesal, de naturaleza sumaria, cuyo objetivo es lograr la rápida consideración y adjudicación de las reclamaciones laborales por empleados en contra de sus patronos.[26] En esa dirección, sabido es que las reclamaciones laborales ameritan ser resueltas con celeridad de forma tal que se pueda implantar la política pública del Estado, de proteger los empleos, desalentar el despido sin



---

[24] 29 LPRA § 185(b).
[25] 29 LPRA § 185(k).
[26] 32 LPRA § 3118. *Patino Chirino v. Parador Villa Antonio*, 196 DPR 439, 446 (2016); *Medina Nazario v. McNeil Healthcare LLC*, 194 DPR 723, 728 (2016).

justa causa y proveer al obrero que resulte despedido los medios económicos para su subsistencia mientras consigue un nuevo empleo.[27]

Es menester señalar que, con la finalidad de continuar promoviendo el carácter sumario de la Ley, la Asamblea Legislativa aprobó la Ley Núm. 133-2014 en la cual manifestó su intención de extender el carácter sumario del estatuto a la etapa apelativa para cumplir con el propósito rector de la misma, de proveer al obrero un remedio rápido y eficaz.[28] En armonía con lo antes expuesto, nuestro Máximo Foro ha resuelto que la revisión de resoluciones interlocutorias es contrario al carácter sumario que, precisamente, busca adelantar el procedimiento. En virtud de ello, los tribunales debemos autolimitar nuestra facultad al efecto.[29]

En este contexto, la parte que pretenda impugnar las resoluciones interlocutorias deberá esperar hasta la sentencia final e instar contra ella el recurso pertinente a base del alegado error cometido.[30] Asimismo, el Tribunal Supremo ha reconocido que lo anterior no sería absoluto, y, por tanto, cedería en aquellos casos en que alguna **resolución sea dictada sin jurisdicción** por el Tribunal de Primera Instancia o en los cuales los **fines de la justicia requieran la intervención** del foro apelativo.[31] Esto es, de manera excepcional, los foros revisores deben mantener y ejercer su facultad revisora mediante *certiorari* en aquellas resoluciones interlocutorias dictadas en un procedimiento sumario (querellas laborales), en las siguientes instancias: (1) **cuando el tribunal primario haya actuado sin jurisdicción; (2) en situaciones en las que la revisión inmediata dispone del caso por completo; o (3) cuando la revisión tenga el efecto de evitar una grave injusticia.**[32]

---

[27] *Ruíz Camilo v. Trafon Group, Inc.*, 200 DPR 254, 265 (2018).
[28] Véase Exposición de Motivos, Ley Núm. 133- 2014. *Patino Chirino v. Parador Villa Antonio, supra*, págs. 446– 447.
[29] *Dávila, Rivera v. Antilles Shipping, Inc.*, 147 DPR 483, 496 (1999).
[30] *Íd.*, pág. 497.
[31] *Díaz Santiago v. PUCPR et al.*, 207 DPR 339, 349 (2021); *Medina Nazario v. McNeil Healthcare, supra*, pág. 730 (énfasis nuestro).
[32] *Díaz Santiago v. PUCPR et al., supra.*

Por su parte, la Sección 3 de la Ley Núm. 2- 1961 implanta, en lo pertinente a la controversia ante nuestra consideración, lo siguiente:

El secretario del tribunal notificará a la parte querellada con copia de la querella, apercibiéndole que deberá radicar su contestación por escrito, con constancia de haber servido copia de la misma al abogado de la parte querellante o a ésta si hubiere comparecido por derecho propio, **dentro de diez (10) días después de la notificación, si ésta se hiciere en el distrito judicial en que se promueve la acción, y dentro de quince (15) días en los demás casos, y apercibiéndole, además, que si así no lo hiciere, se dictará sentencia en su contra, concediendo el remedio solicitado, sin más citarle ni oírle.** Solamente a moción de la parte querellada, la cual deberá notificarse al abogado de la parte querellante o a ésta si compareciere por derecho propio, en que se expongan bajo juramento los motivos que para ello tuviere la parte querellada, podrá el juez, si de la faz de la moción encontrara causa justificada, prorrogar el término para contestar. En ningún otro caso tendrá jurisdicción el tribunal para conceder esa prórroga. (Énfasis nuestro).

A su vez, la Sección 4 de la de la Ley Núm. 2- 1961 instaura, en lo que concierne a nuestra controversia, que:

[...]
Si el querellado no radicara su contestación a la querella en la forma y en el término dispuestos en la Sección 3 de esta Ley, el juez dictará sentencia contra el querellado, a instancias del querellante, concediendo el remedio solicitado. La sentencia a esos efectos será final y de la misma no podrá apelarse.
[...]

### – C – *Emplazamiento*

El emplazamiento es el mecanismo procesal mediante el cual se le notifica a la parte demandada sobre la existencia de una reclamación instada en su contra y el tribunal adquiere jurisdicción sobre su persona para resolver el asunto.[33] Dicho mecanismo procesal es parte esencial del debido proceso de ley, pues su propósito principal es notificar a la parte demandada de forma sucinta y sencilla que se ha presentado una acción en su contra, garantizándole la oportunidad de comparecer en el juicio, ser oído y presentar prueba a su favor.[34] Conforme a lo anterior, no es hasta que se diligencie el emplazamiento y se adquiera jurisdicción que la persona puede

---

[33] *Martajeva v. Ferré Morris y otros*, 210 DPR 612, 620 (2022); *Pérez Quiles v. Santiago Cintrón*, 206 DPR 379, 384 (2021); *Rivera Marrero v. Santiago Martínez*, 203 DPR 462, 480 (2019).
[34] *Rivera Torres v. Díaz López*, 203 DPR 982 (2020); *Bernier González v. Rodríguez Becerra*, 200 DPR 637, 644 (2018); *Torres Zayas v. Montano Gómez*, 199 DPR 458, 467 (2017).

ser considerada propiamente parte; aunque haya sido nombrada en el epígrafe de la demanda, hasta ese momento sólo es parte nominal.[35]

Así pues, los emplazamientos se clasifican por la forma de diligenciarlos y por el domicilio de la parte demandada. El *emplazamiento personal* es aquel que se lleva a cabo mediante la entrega de la demanda y del emplazamiento a la parte demandada. Igualmente, el *emplazamiento mediante edicto* es aquel que se diligencia mediante la publicación de edicto en periódico de circulación general.[36]

En consonancia, los requisitos del emplazamiento son de *cumplimiento estricto* y su adecuado diligenciamiento constituye un imperativo constitucional del debido proceso de ley.[37] La razón de esta rigurosidad es que el emplazamiento se mueve dentro del campo del Derecho constitucional y más específicamente dentro del derecho de la parte demandad a ser oído y notificado de cualquier reclamación en su contra.[38] A tales efectos, toda parte demandada tiene el derecho a ser emplazada "conforme a derecho y existe en nuestro ordenamiento una política pública de que la parte demandada debe ser emplazada debidamente para evitar el fraude y que se utilicen procedimientos judiciales con el propósito de privar a una persona de su propiedad sin el debido proceso de ley".[39] En virtud de lo cual, ante un emplazamiento defectuoso, el tribunal está impedido de actuar contra una persona y, si lo hace, la sentencia que recaiga será nula por falta de jurisdicción sobre la persona.[40]

De otra parte, el mecanismo de emplazamiento establecido por la Ley Núm. 2- 1961, fue creado específicamente para cumplir con el propósito legislativo de imponer un medio rápido y eficiente mediante el cual el obrero

---

[35] *Natal Albelo v. Romero Lugo y otros*, 206 DPR 465, 475 (2021); *Rivera Marrero v. Santiago Martínez, supra*, pág. 483.
[36] R. Hernández Colón, *Práctica Jurídica de Puerto Rico: Derecho Procesal Civil*, 6ta edición, Lexis Nexis, 2017, pág. 260.
[37] *Rivera Marrero v. Santiago Martínez, supra*, pág. 481- 486; *Quiñones Román v. Cía. ABC*, 152 DPR 367, 374 (2000).
[38] R. Hernández Colón, *Práctica Jurídica de Puerto Rico: Derecho Procesal Civil*, 6ta ed., San Juan, Ed. LexisNexis, 2017, pág. 257. *Torres Zayas v. Montano Gómez, et als., supra*, pág. 468.
[39] *First Bank of P.R. v. Inmob. Nac., Inc*, 144 DPR 901, 916 (1998).
[40] *Rivera v. Jaume*, 157 DPR 562, 573- 574 (2002).

pueda notificarle al patrono sobre su reclamación laboral.[41] Cónsono con lo anterior, la Ley Núm. 2, *supra*, apresta que el emplazamiento se diligenciará a la persona que en cualquier forma represente a la parte querellada en el establecimiento o sitio en que se realizó el trabajo que dio origen a la reclamación o en su oficina o residencia. Nuestro más Alto Foro ha resuelto en reiteradas ocasiones que lo importante es que la parte querellada o el patrono advenga en conocimiento de que se ha presentado una acción judicial en su contra y de esta forma, brindarle la oportunidad de defender sus derechos conforme al debido proceso de ley[42].

- III -

En su recurso, WINDMAR plantea que incidió el tribunal primario al dictar *Sentencia en Rebeldía* y solicita que revoquemos la misma. Propuso los siguientes señalamientos de error: (i) el emplazamiento es nulo; (ii) la *Sentencia en Rebeldía* se dictó sin jurisdicción; (iii) si apercibir a la parte demandada con exactitud del término de ley para contestar una querella laboral es un requisito constitucional y su incumplimiento acarrea la nulidad; (iv) se ha violado el derecho constitucional al debido proceso de ley del patrono; y (v) el error en el emplazamiento no es subsanable e implica su nulidad. WINDMAR particulariza que, la Sección 3 de la Ley Núm. 2- 1961 es clara y libre de toda ambigüedad al fijar los términos para contestar una querella. Por ello, razona que, correspondía que se decretara la nulidad del emplazamiento en la medida en que el contenido de éste es defectuoso por no incluir el término correcto en que podía presentar su alegación responsiva.

CARRILLO PONTÓN Y OTROS sostienen que la *Sentencia en Rebeldía* apelada fue dictada conforme a derecho y, por tanto, no procede su revocación. Replican que la única razón por la cual WINDMAR no compareció

---

[41] *Cabrera v. Zen SPA*, 169 DPR 177, 187 (2007).
[42] *Íd.*

en intervalo para contestar la *Querella* fue su negligencia crasa toda vez que había sido debidamente notificado del término para comparecer. *Veamos.*

En este caso, surge claramente del expediente que: (i) se entabló *Querella* ante el Tribunal Superior de Ponce; y (ii) tanto en la *Querella* como en el *Emplazamiento* diligenciado a WINDMAR se incluyó una dirección física ubicada en el pueblo de Ponce, Puerto Rico.[43] No obstante, en el *Emplazamiento* se le apercibió a la parte querellada que debía presentar su alegación responsiva dentro de los **quince (15) días** [no de **diez (10) días** como establece la Ley Núm. 2- 1961] de haber sido diligenciado el emplazamiento, excluyendo el día del emplazamiento, ante el Tribunal. Esto como si se tratase de un emplazamiento diligenciado **fuera** del distrito judicial en que se promueve la acción.

WINDMAR asevera que la omisión o defecto del término correcto para comparecer, de por sí, acarrea la nulidad del emplazamiento y ante ello, su diligenciamiento no le confirió jurisdicción al tribunal de instancia para atender el caso. CARRILLO PONTÓN Y OTROS sustentan que en nada perjudicó a la parte querellada el término contenido en su emplazamiento. Afirman por el contrario que, haberle brindado un término mayor al dispuesto por la Ley Núm. 2- 1961 para aquellos casos en que se emplaza en el distrito judicial en que se promueve la acción, solo tuvo el efecto de demostrar que WINDMAR no compareció ante el foro primario por su negligencia crasa y no porque se le indujo a error o se le privó de poder defender sus derechos.

Nuestro más Alto Foro ha sido enfático en que el emplazamiento juega un rol fundamental en lo concerniente al *debido proceso de ley* pues además de notificarle a la parte demandada sobre la existencia de una acción en su contra y de su naturaleza, **le advierte también el plazo dentro del cual éste deberá comparecer,** según su criterio, ante el tribunal a ejercer su

---

[43] La dirección física es: Valle Real Shopping Center, Ponce, PR 00716. El *Diligenciamiento del Emplazamiento por Persona Particular* expresa: "[...] que el diligenciamiento del emplazamiento y de la querella del caso de referencia fue realizado por mí, el 16 de octubre de 2024, de la siguiente forma: [..] Mediante entrega personal a la parte querellada en la siguiente dirección física: **Ponce, PR**".

derecho a ser oído y a presentar prueba a su favor. Las Reglas de Procedimiento Civil de 2009 expresamente disponen que el emplazamiento deberá contener, entre otros requisitos de forma, **el plazo dentro del cual la parte demandada deberá comparecer ante el tribunal.**[44] Por tanto, es requisito fundamental e indispensable que en el contenido del emplazamiento se incluya no solo el término para acudir ante el foro primario, sino que será crucial se haga referencia al plazo correcto en derecho. Resolver lo contrario implicaría ignorar el axioma constitucional del *debido proceso de ley*.

En este caso, colegimos que el *Emplazamiento* es nulo y resulta insuficiente su diligenciamiento efectuado a WINDMAR toda vez que no apercibió apropiadamente a la parte demandada o querellada con exactitud sobre el término dispuesto por ley para presentar su alegación responsiva. Por ende, el error u omisión del intervalo no es subsanable e implica la nulidad del emplazamiento.[45] Acorde con los principios antes esbozados y examinado el *Emplazamiento*, incurrió en error el foro primario al continuar con los procedimientos.

De otra parte, en dos (2) ocasiones, WINDMAR, solicitó que se desestimara la causa de acción apoyándose en que no había jurisdicción debido a la nulidad del emplazamiento diligenciado. Sustentó que no se le notificó correctamente el término para comparecer ante el foro primario y ello violentaba su derecho constitucional a un *debido proceso de ley*. Acotó

---

[44] Regla 4.2. Forma El emplazamiento deberá ser firmado por el Secretario o Secretaria, llevará el nombre y el sello del tribunal, con especificación de la sala, y los nombres de las partes, sujeto a lo dispuesto en la Regla 8.1. Se dirigirá a la parte demandada y hará constar el nombre, la dirección postal, el número de teléfono, el número de fax, la dirección electrónica y el número del abogado o abogada ante el Tribunal Supremo de Puerto Rico de la parte demandante, si tiene, o de ésta si no tiene abogado o abogada, y **el plazo dentro del cual estas reglas exigen que comparezca la parte demandada al tribunal, apercibiéndole que de así no hacerlo podrá dictarse sentencia en rebeldía en su contra concediéndose el remedio solicitado en la demanda o cualquier otro, si el Tribunal, en el ejercicio de su sana discreción, lo entiende procedente.**[énfasis nuestro].

[45] La Regla 4.8 de las de Procedimiento Civil de 2009 especifica que: En cualquier momento, a su discreción y en los términos que crea justos, el tribunal puede permitir que se enmiende cualquier emplazamiento o la constancia de su diligenciamiento, a menos que se demuestre claramente que dé así hacerlo se perjudicarían sustancialmente los derechos esenciales de la parte contra quien se expidió el emplazamiento. La jurisprudencia ha reconocido que una equivocación o error técnico que puede enmendarse son aquellos de forma como el nombre de la parte demandada. *León v. Rest. El Tropical*, 154 DPR 249, 277 (2001).



que, por imperativo constitucional, ante la falta de un emplazamiento correcto correspondía se decretase la nulidad radical del proceso.

CARRILLO PONTÓN Y OTROS se opuso y señaló que WINDMAR no expuso las razones por las cuales no compareció dentro del término jurisdiccional provisto para ello en la Ley Núm. 2- 1961. Además, aun cuando CARRILLO PONTÓN Y OTROS reconocieron el error en el emplazamiento, reseñaron que este no provocaba que el emplazamiento fuese nulo. Así, trabada la controversia, el foro primario denegó la petición de desestimación y dictó *Sentencia en Rebeldía*.

Es bien sabido que, bajo nuestro ordenamiento constitucional, ninguna persona puede ser privada de su propiedad sin el *debido proceso de ley*.[46] La cláusula del *debido proceso de ley* en su vertiente procesal les exige a los componentes del Estado garantizar que, al interferir con los intereses propietarios de una persona, se cumpla con un procedimiento justo y equitativo.[47]

Asimismo, es norma reiterada que el tribunal debe adquirir *jurisdicción* sobre la persona de la parte demandada previo a dictar sentencia. Por consiguiente, los requisitos del emplazamiento son de *cumplimiento estricto* y su adecuado diligenciamiento constituye un imperativo constitucional del *debido proceso de ley*.[48] La *jurisdicción* sobre la persona es "[e]l poder del tribunal para sujetar a una parte a su decisión".[49] Por lo tanto, ante un emplazamiento defectuoso, el tribunal está impedido de actuar contra una persona y, si lo hace, la sentencia que recaiga será nula por falta de jurisdicción sobre la persona.[50] Así, el tribunal apelado cometió los errores reseñados.

---

[46] Art. II, Sec. 7, Const. ELA [Const. PR], LPRA, Tomo 1.
[47] *Román Ortiz v. OGPe*, 203 DPR 947, 953 (2020).
[48] *Rivera Marrero v. Santiago Martínez, supra*, pág. 481- 486; *Quiñones Román v. Cía. ABC*, 152 DPR 367, 374 (2000).
[49] *Trans-Oceanic Life Ins. v. Oracle Corp.*, 184 DPR 689, 701 (2012), citando a R. Hernández Colón, *Derecho Procesal Civil*, 5ta ed., San Juan, Lexisnexis, 2010, pág. 40.
[50] *Rivera v. Jaume*, 157 DPR 562, 573- 574 (2002).

En pocas palabras, es importante puntualizar que el aviso o advertencia de un período que pueda tener una parte demandada para comparecer ante el tribunal es piedra angular del *debido proceso de ley* que se le tiene que garantizar. En el caso de marras, el defecto del emplazamiento, consistente en aludir a un **plazo incorrecto** para la parte querellada o patrono comparecer ante el foro apelado invalidó, anuló y resultó insuficiente el diligenciamiento, así como tuvo el efecto de que no fuera emplazada conforme a derecho. Dicha inadvertencia del tiempo no puede ser enmendada o subsanada. Discernimos que **CARRILLO PONTÓN Y OTROS** debió constatar que el emplazamiento cumpliese con todos los requerimientos de la Reglas de Procedimiento Civil y la Ley Núm. 2- 1961.[51]

Por los fundamentos antes expuestos, deducimos que el tribunal apelado transgredió toda vez que actuó sin jurisdicción sobre **WINDMAR P.V. ENERGY, INC. H/N/C WINDMAR HOME (WINDMAR)**; por lo que, **revocaríamos** la *Sentencia en Rebeldía* prescrita el 22 de enero de 2025 por el Tribunal de Primera Instancia, Sala Superior de Ponce.

Eileen J. Barresi Ramos
Juez de Apelaciones

---

[51] En el caso *Lucero v San Juan Star*, 159 DPR 494, 516- 517 (2003), se reiteró que el "carácter reparador y expedito del procedimiento establecido bajo la Ley Núm. 2, ante, así como también el enfoque proteccionista en beneficio del obrero que ésta persigue, *pero esa postura no puede tener el efecto de privar a la otra parte de un debido proceso de ley*. Esto es, a la parte querellada al menos debe dársele la oportunidad de ser *notificada adecuadamente* del pleito en su contra de tal manera que exista una probabilidad razonable de que éste será informado de la existencia del mismo para que así pueda defenderse de la querella. Siendo éste un procedimiento sumario, de términos cortos y de consecuencia adversas inmediatas para el patrono, la *notificación adecuada de la reclamación en su contra es un derecho básico que se le debe asegurar a éste*".